JAMES A. BRYANT, ESQ. (SBN 255652)
James.bryant@thecalawgroup.com
**THE COCHRAN FIRM – CALIFORNIA**
4929 Wilshire Boulevard, Suite 1010
Los Angeles, California 90010
Telephone: (323) 435-8205
Facsimile: (323) 282-5280

RODNEY S. DIGGS, Esq. (SBN 274459)
rdiggs@imwlaw.com
**IVIE, McNEILL, WYATT, PURCELL & DIGGS**
444 S. Flower Street, Suite 1800
Los Angeles, CA  90071
Tel:  (213) 489-0028
Fax: (213) 489-0552

Attorneys for Plaintiff
DoneRight & Company, LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES DIVISION

| | |
|---|---|
| DONERIGHT & COMPANY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> CARRIE LYN HENMAN, individually and d/b/a GLOBAL MANAGEMENT GROUP; EARVIN "MAGIC" JOHNSON, individually and d/b/a MAGIC JOHNSON ENTERPRISES; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No.: <br><br> COMPLAINT FOR: <br><br> 1. Violation of Securities Act of 1933 § 5 <br> 2. Violation of Securities Act of 1933 § 17(a) <br> 3. Violation of Securities Exchange Act of 1934 § 10(b) and Rule 10b-5 <br> 4. Violation of Securities Exchange Act of 1934 § 20(a) (Control Person Liability) <br> 5. Violation of 18 U.S.C. § 1962(c) (RICO) <br> 6. Violation of 18 U.S.C. § 1962(d) (RICO Conspiracy) |

7. Violation of California Corporations Code § 25110

8. Violation of California Corporations Code § 25401

9. Violation of California Corporations Code § 25501

10. Violation of California Corporations Code § 25504.1

11. Common Law Fraud

12. Promissory Fraud

13. Breach of Contract

14. Breach of Implied Covenant of Good Faith and Fair Dealing

15. Violation of California Business & Professions Code § 17200 et seq.

16. Conversion

17. Unjust Enrichment

DEMAND FOR JURY TRIAL

## NATURE OF THE CASE

1.      This case arises from a fraudulent securities offering scheme in which Defendants solicited and obtained $250,000 from Plaintiff through material misrepresentations in connection with an unregistered offering of securities disguised as an investment in a celebrity-endorsed NFT and metaverse project branded "Magicverse." Defendants promised Plaintiff exclusive participation rights, perpetual royalty payments, promotional opportunities with celebrity endorser Johnson, and an imminent product launch that would generate substantial returns. None of these promises materialized. The project never launched, no NFTs were minted, no royalties were paid, and Defendants ultimately ceased all communication with Plaintiff while retaining the full $250,000 investment.

2.      Defendants' fraudulent scheme continues to harm Plaintiff by depriving Plaintiff of the use and benefit of the $250,000 investment and

preventing Plaintiff from pursuing alternative business opportunities. Defendants, working in concert, must be held accountable for their securities fraud, racketeering violations, and contractual breaches.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over Plaintiff's federal securities claims pursuant to Section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a), and Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa.

4.      This Court has federal question jurisdiction over Plaintiff's RICO claims pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331.

5.      Supplemental jurisdiction exists over Plaintiff's state law claims under 28 U.S.C. § 1367(a), as they form part of the same case or controversy as Plaintiff's federal securities and RICO claims.

6.      Venue is proper in this District pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), Section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa, 18 U.S.C. § 1965(a), and 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District. Defendant Henman operates Global Management Group from Sherman Oaks, California, within this District. Defendant Johnson operates Magic Johnson Enterprises from Beverly Hills, California, within this District. The Magicverse entity was formed with a Los Angeles address at 355 South Grand Avenue, Suite 2450, Los Angeles, California 90071. The Investment Agreement designates Los Angeles, California as the location for the Magicverse entity and specifies that California law governs all disputes. Defendants directed electronic communications into this District, coordinated banking activities involving California-based accounts and personnel, and conducted promotional activities within this District.

## **PARTIES**

7.     Plaintiff DoneRight & Company, LLC is a limited liability company organized under the laws of Texas with its principal place of business in Houston, Texas. Plaintiff is represented by Jimmy Phan, who serves as Founder and Chief Executive Officer and who signed the Magicverse Investment Agreement on behalf of Plaintiff.

8.     Defendant Carrie Lyn Henman is an individual and citizen of California who resides in California. Defendant Henman conducts business under the name Global Management Group ("GMG") with a business address at 13547 Ventura Blvd., Suite 411, Sherman Oaks, California 91423, within this District. Henman held herself out as having expertise in Web3 technology, cryptocurrency, and NFT development. Henman served as Founder and Chief Executive Officer of Global Management Group and signed the Magicverse Investment Agreement on behalf of GMG. Henman also identified herself as "Co-Founder of .Paak House, a 501(c)3" and used the moniker "Ms. NFTy" in connection with her promotional activities.

9.     Defendant Earvin "Magic" Johnson is an individual and citizen of California who resides in California. Defendant Johnson conducts business under the name Magic Johnson Enterprises with a business address at 9100 Wilshire Blvd., Suite 700 (East Tower), Beverly Hills, California 90212, within this District. Johnson is a former professional basketball player and prominent business figure with substantial public recognition and influence. Johnson actively participated in the Magicverse investment scheme, directly coordinated banking logistics for Plaintiff's investment, and promoted the project through his celebrity status and social media presence.

10.     The true names and capacities of the defendants named herein as DOES 1 through 50, whether individual, corporate, associate, or otherwise, are

unknown to Plaintiff, who therefore sues said defendants by said fictitious names. Plaintiff is informed and believes, and thereon alleges, that each of the defendants designated herein as DOE is legally responsible for the events and happenings hereinafter alleged and legally caused injury and damages proximately thereby to Plaintiff as alleged herein. Plaintiff will seek leave to amend the Complaint when the true names and capacities of said DOE defendants have been ascertained.

11.    Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants participated in and is in some manner responsible for the acts described in this Complaint and any damages resulting therefrom.

12.    Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants has acted in concert and participation with each other concerning the claims in this Complaint.

13.    Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants was empowered to act as the agent, servant, and/or employee of each other, and that all the acts alleged to have been done by each of them were authorized, approved, and/or ratified by each of them.

## <u>GENERAL ALLEGATIONS</u>

14.    Plaintiff had known Defendant Henman since approximately 2015 or 2016 through previous business interactions. Throughout 2021 and 2022, Plaintiff occasionally consulted Henman regarding cryptocurrency and NFT matters based on her representations of expertise in these areas.

15.    On or about July 11, 2022, a business entity designated "Magicverse" was formed under California law with an address at 355 South Grand Avenue, Suite 2450, Los Angeles, California 90071. The timing of this formation corresponded directly with Defendants' solicitation of Plaintiff's investment.

16.    In or around mid-July 2022, approximately two to three weeks before Plaintiff made the investment, Henman contacted Plaintiff regarding what she described as an exclusive investment opportunity in the Magicverse project.

17.     Henman represented to Plaintiff that Magicverse would be a celebrity-anchored NFT and metaverse platform associated with Johnson. She described it as an educational platform designed to help underserved and urban communities learn about and earn cryptocurrency through participation in the metaverse ecosystem.

18.     Henman made numerous material representations to induce Plaintiff's investment, including that Plaintiff would receive exclusive rights to operate "the only jewelry store in the Magic metaverse," creating a monopoly position within the virtual ecosystem.

19.     Henman represented that Plaintiff would have the opportunity to tour with Johnson to promote both the Magicverse project and Plaintiff's business, providing unprecedented marketing and promotional access to Johnson's celebrity platform.

20.     Henman represented that the Magicverse Genesis NFT collection would launch quickly, initially targeting September 2022 as the launch date. She represented that this imminent timeline created urgency for Plaintiff to invest immediately or lose the opportunity.

21.     Henman represented that investment opportunities were strictly limited and that Plaintiff needed to act fast to secure a position, creating artificial scarcity to pressure Plaintiff's investment decision.

22.     Henman made the false and fraudulent representation that "Dr. Dre had already invested 500k" in the Magicverse project. This statement was designed to provide celebrity validation, suggest that other sophisticated and wealthy investors had conducted due diligence and found the investment worthy, and create social proof to overcome any hesitation Plaintiff might have.

23.     Henman represented that she was personally vouching for Plaintiff to Johnson and other project stakeholders, implying that her recommendation carried weight and that Plaintiff was receiving preferential treatment.

24.    Henman represented that Plaintiff would receive perpetual royalty payments for life from the Magicverse project, providing ongoing passive income.

25.    Henman represented that Plaintiff would quickly recoup the initial investment and double that amount upon the initial NFT mint based on the anticipated demand and Johnson's involvement.

26.    Defendants failed to disclose that the Magicverse investment constituted a security subject to federal and state securities laws.

27.    Defendants failed to disclose that the offering was not registered or qualified with the Securities and Exchange Commission or California securities regulators.

28.    Defendants failed to disclose their lack of technical capability, development resources, and operational infrastructure necessary to successfully develop and launch the represented Magicverse product.

29.    Defendants failed to disclose the true nature and extent of Johnson's involvement, instead allowing Plaintiff to believe that Johnson was an active business partner who had conducted due diligence and was committed to the venture's success.

30.    Defendants failed to disclose the lack of actual project development or progress toward launching the Magicverse product, despite representing an imminent September 2022 launch date.

**The Investment Agreement and Banking Coordination**

31.    Based on Defendants' material misrepresentations, Plaintiff agreed to invest $250,000 in the Magicverse project. On August 4, 2022, Plaintiff and Defendant Henman, acting individually and on behalf of Global Management Group, executed a written "Magicverse Investment Agreement." The Agreement identified the parties as Global Management Group and DoneRight and Company, LLC, was signed by Henman in her capacity as Founder/CEO of Global

Management Group, and was signed by Jimmy Phan in his capacity as Founder/CEO of DoneRight and Company, LLC.

32.      Under the Investment Agreement, Plaintiff agreed to remit $250,000 to GMG within five business days of the August 4, 2022 effective date. In exchange for the $250,000 investment, the Agreement provided that GMG would pay Plaintiff "an amount equal to 1.75% of initial mint revenue and 1% of royalties from the MAGICVERSE GENESIS NFT Collection (the 'Product') throughout the world." The Agreement defined the Product as "the MAGICVERSE NFT Collection, as that brand name may change from time-to-time, for any and all indications, and regardless of whether the sales are generated directly by GMG or any partner or assignee of GMG." The Agreement required GMG to "provide DoneRight and Company, LLC reasonable information regarding marketing plans for the Product." The Agreement selected California law as the governing law and provided that it "shall be construed, governed, interpreted, and applied in accordance with the laws of the State of California, exclusive of its conflicts of law provisions."

33.      In the days immediately preceding and following execution of the Investment Agreement, Henman coordinated detailed banking logistics for Plaintiff's $250,000 cash deposit through electronic text messages. On August 2, 2022, Henman sent Plaintiff a text message stating "I give Magic partner list tomorrow," explicitly referencing Johnson and indicating that Plaintiff would be identified as a partner to Johnson.

34.      On August 4, 2022, Henman coordinated the specific logistics, discussing the amount of the deposit and clarifying that Plaintiff should bring "$125k" in cash for the deposit, though the total investment amount was $250,000. Henman sent Plaintiff text messages stating "FYI - partner deposit for MJ" and "I pulled your logo off internet fyi For my meeting today." These messages explicitly

characterized Plaintiff's investment as a "partner deposit" and directly connected it to Johnson through the abbreviation "MJ."

35.    In a subsequent August 4, 2022 text message, Henman provided specific banking instructions, stating "Usha bank manager; at the Wells Fargo 6783 HIGHWAY 6 S Houston, TX. 77083. She will take care of you. She knows this is for Magic J." This message explicitly informed the Wells Fargo bank manager that Plaintiff's substantial cash deposit was "for Magic J," demonstrating Johnson's direct involvement in and knowledge of the financial transaction.

36.    On August 4, 2022, Henman sent an email to Wells Fargo personnel with the subject line "Fw: Business Account," stating "Thank you for your assistance. Mr. Phan will be there in 1 hour for the cash deposit." The Investment Agreement itself provided deposit instructions identifying a Wells Fargo Bank account with the company information listed as "Magic Verse, 355 South Grand Avenue, Suite 2450 Los Angeles, CA 90071."

37.    Plaintiff made the $250,000 cash deposit in August 2022 as directed by Henman in accordance with the coordinated banking instructions referencing Johnson. The funds were accepted by Wells Fargo personnel who had been specifically advised that the deposit was "for Magic J." These communications and banking coordination demonstrate that Johnson was not merely a passive celebrity endorser lending his name to marketing materials, but rather an active participant in the financial infrastructure of the investment scheme who directly coordinated how investor funds would be handled and processed.

38.    Following Plaintiff's $250,000 investment in August 2022, Defendants failed to launch the Magicverse project as represented. The initially projected September 2022 launch date passed without any product release. When Plaintiff inquired about the status of the project, Defendants repeatedly pushed back the launch timeline with various excuses and false assurances.

39.    Despite the contractual obligation to provide Plaintiff with "reasonable information regarding marketing plans for the Product," Defendants failed to provide meaningful updates or transparency about the project's status, development progress, or use of investor funds.

40.    No Magicverse Genesis NFT collection was ever minted, created, or offered to the public.

41.    No marketplace was established for trading Magicverse NFTs or generating royalty revenue as promised in the Investment Agreement.

42.    Plaintiff received no revenue or royalty payments of any kind from Defendants despite the contractual promises of 1.75% of initial mint revenue and 1% of ongoing royalties.

43.    Plaintiff was never provided with exclusive rights to operate a jewelry store in the Magic metaverse because no such metaverse was ever developed or launched.

44.    Plaintiff never had any opportunity to tour with Johnson to promote the project or Plaintiff's business, contrary to Henman's representations.

### Plaintiff's Demands for Information and Refund

45.    By March through May 2023, approximately seven to nine months after making the investment with no product launch or returns, Plaintiff began demanding either project updates or a refund of the $250,000 investment. Plaintiff informed Henman that someone had invested with Plaintiff and was requesting their money back.

46.    In response to these demands, Henman began avoiding Plaintiff's communications and providing evasive responses. She claimed that other people involved in the project were "lagging or not returning her calls" and made other excuses for the lack of progress. Henman's responsiveness declined significantly during this period. She would occasionally call Plaintiff after extended delays,

claim to be busy, and apologize without providing substantive information or solutions.

47.    In May or June 2023, Henman made the false representation that she had retained an attorney who sent a demand letter, presumably to other parties involved in the Magicverse project. However, Henman never provided Plaintiff with the attorney's name or contact information despite Plaintiff's repeated requests. When pressed for this information, Henman provided implausible excuses. Upon information and belief, no such attorney existed and this representation was fabricated to pacify Plaintiff and delay accountability.

48.    On December 6, 2023, Henman had her final communication with Plaintiff. She stated that she was on a plane and would reach out to Plaintiff later. Henman never contacted Plaintiff again after December 6, 2023.

49.    Plaintiff sent text messages to Henman following December 6, 2023, but received no response. Plaintiff attempted to contact Henman through Instagram, but received no response.

50.    As of the filing of this Complaint, more than two years after Defendants ceased communication and more than three years after Plaintiff's investment, no Magicverse product has been launched, no NFTs have been minted, no marketplace has been established, and Plaintiff has received no returns whatsoever on the $250,000 investment.

51.    Defendants have retained Plaintiff's entire $250,000 investment without providing any of the promised consideration, returns, information, or opportunities. Upon information and belief, no legitimate business progress was ever made on the project.

### The Investment Constituted an Unregistered Security

52.    The Magicverse investment opportunity constituted an investment contract and therefore a "security" within the meaning of Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1), Section 3(a)(10) of the Securities Exchange

Act, 15 U.S.C. § 78c(a)(10), and California Corporations Code Section 25019. Plaintiff invested $250,000 in money in a common enterprise with the expectation of profits derived solely from the entrepreneurial and managerial efforts of Defendants. Plaintiff's expected profits depended entirely on Defendants' development of the blockchain technology infrastructure, creation of the NFT collection, marketing and promotion to potential purchasers, execution of the initial mint sale, establishment of the secondary marketplace, and Johnson's celebrity endorsement activities.

53.    The Magicverse investment offering was not registered with the Securities and Exchange Commission pursuant to Section 5 of the Securities Act. The Magicverse investment offering was not qualified with the California Department of Financial Protection and Innovation pursuant to California Corporations Code Section 25110. No exemption from federal or state registration or qualification requirements applied to Defendants' offering of the Magicverse investment to Plaintiff.

54.    Defendants failed to provide Plaintiff with any of the disclosures required in connection with the offer and sale of securities. Defendants failed to disclose that the Magicverse investment constituted a security subject to federal and state securities laws, that the offering was unregistered and unqualified, the material risks associated with the investment, the speculative nature of NFT ventures, or Defendants' lack of technical capability and operational infrastructure to successfully develop and launch the product.

55.    As a direct result of Defendants' fraudulent conduct, Plaintiff has suffered and continues to suffer damages in an amount to be determined at trial, but not less than $250,000. Plaintiff has lost the entire $250,000 investment. Plaintiff has lost the expected revenue and royalty streams promised under the Investment Agreement, specifically 1.75% of initial mint revenue and 1% of ongoing royalties. Plaintiff has suffered opportunity costs from being unable to

invest those funds in legitimate business ventures. Plaintiff has suffered emotional distress from Defendants' deception and subsequent abandonment.

56.    Defendants have been unjustly enriched by retaining Plaintiff's $250,000 without providing any consideration, returns, exclusive rights, promotional opportunities, or other benefits that formed the basis for Plaintiff's investment. Defendants have obtained use and control of Plaintiff's funds while providing nothing of value in return.

57.    Defendants have committed all of the aforesaid acts deliberately, willfully, intentionally, maliciously, and in reckless disregard of Plaintiff's rights. Defendants made material misrepresentations with knowledge of their falsity or with reckless disregard for their truth. Defendants coordinated an investment scheme designed to defraud Plaintiff through false promises of celebrity involvement, exclusive opportunities, and imminent returns.

58.    Defendants continue to retain Plaintiff's funds and, unless restrained by this Court, will continue to engage in similar fraudulent conduct with other investors. Defendants will continue to solicit investments in unregistered securities through material misrepresentations, fail to provide required disclosures, and misappropriate investor funds, all to the irreparable injury of other investors who lack an adequate remedy at law.

## FIRST CLAIM FOR RELIEF

### (Violation of Securities Act of 1933 § 5 Against All Defendants)

59.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

60.    At all relevant times, the Magicverse investment opportunity constituted a "security" within the meaning of Section 2(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77b(a)(1).

61.    No registration statement was filed with or made effective by the Securities and Exchange Commission with respect to the Magicverse securities

offering prior to or at the time Defendants offered and sold the security to Plaintiff. No exemption from the registration requirements of Section 5 of the Securities Act applied to Defendants' offer and sale of the Magicverse security to Plaintiff.

62.    Defendants directly and indirectly made use of means and instruments of transportation and communication in interstate commerce and of the mails to offer and sell the unregistered Magicverse security to Plaintiff in violation of Section 5(a) and Section 5(c) of the Securities Act, 15 U.S.C. § 77e(a) and (c).

63.    As a direct and proximate result of Defendants' violations of Section 5 of the Securities Act, Plaintiff has been damaged in an amount to be proven at trial, including the consideration paid of $250,000, plus interest, less any amounts received by Plaintiff from Defendants.

64.    Pursuant to Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77l(a)(1), Plaintiff is entitled to rescission and recovery of the consideration paid for the security with interest, or if Plaintiff no longer owns the security, to damages.

## SECOND CLAIM FOR RELIEF

### (Violation of Securities Act of 1933 § 17(a) Against All Defendants)

65.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

66.    At all relevant times, the Magicverse investment opportunity constituted a "security" within the meaning of Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1).

67.    Defendants, directly and indirectly, by use of means and instruments of transportation and communication in interstate commerce and by use of the mails, in the offer and sale of the Magicverse security to Plaintiff employed devices, schemes, and artifices to defraud Plaintiff; obtained money and property from Plaintiff by means of untrue statements of material fact and by omitting to state material facts necessary to make the statements made, in light of the

circumstances under which they were made, not misleading; and engaged in transactions, practices, and courses of business which operated as a fraud and deceit upon Plaintiff.

68.    These violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), were committed with scienter, meaning that Defendants acted with intent to deceive, manipulate, or defraud, or with reckless disregard for the truth. Defendants knowingly made false representations regarding the September 2022 launch date, Dr. Dre's $500,000 investment, exclusive jewelry store rights, touring opportunities with Johnson, and perpetual royalty payments, all with knowledge of their falsity or reckless disregard for their truth.

69.    As a direct and proximate result of Defendants' violations of Section 17(a) of the Securities Act, Plaintiff has been damaged in an amount to be proven at trial, but not less than $250,000, plus interest and consequential damages.

70.    Pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), Plaintiff is entitled to rescission and recovery of the consideration paid for the security with interest, or if Plaintiff no longer owns the security, to damages.

### THIRD CLAIM FOR RELIEF

### (Violation of Securities Exchange Act of 1934 § 10(b) and Rule 10b-5 Against All Defendants)

71.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

72.    At all relevant times, the Magicverse investment opportunity constituted a "security" within the meaning of Section 3(a)(10) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10).

73.    Defendants, directly and indirectly, by use of means and instrumentalities of interstate commerce and of the mails, in connection with the purchase and sale of the Magicverse security employed devices, schemes, and

artifices to defraud Plaintiff; made untrue statements of material fact and omitted to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and engaged in acts, practices, and courses of business which operated as a fraud and deceit upon Plaintiff.

74.    Specifically, in mid-July 2022, Henman made material misrepresentations to Plaintiff that the Magicverse Genesis NFT collection would launch in September 2022, that Dr. Dre had already invested $500,000, that Plaintiff would receive exclusive jewelry store rights in the Magic metaverse, and that Plaintiff would tour with Johnson to promote the project. These statements were false when made and were material to Plaintiff's investment decision. A reasonable investor would have considered Johnson's celebrity involvement, the exclusive nature of the investment opportunity, and the validation provided by other celebrity investors to be significant factors in deciding whether to invest $250,000.

75.    Defendants made these misrepresentations with scienter. Henman knew or recklessly disregarded that the September 2022 launch timeline was false when she represented it to Plaintiff in July-August 2022. The complete failure to launch any product demonstrates that no legitimate development effort was underway. Henman knew that the representation regarding Dr. Dre's investment was false or made the statement with reckless disregard for its truth. Johnson knew or recklessly disregarded that his involvement was being used to induce investments through material misrepresentations when he directly participated in banking coordination explicitly identifying Plaintiff's funds as a "partner deposit for MJ."

76.    Plaintiff reasonably relied on Defendants' material misrepresentations in deciding to invest $250,000 in the Magicverse security. Had Plaintiff known the truth that no Magicverse product would be launched, that other represented

celebrity investors had not actually invested, and that Johnson was not operating a legitimate business venture, Plaintiff would not have invested.

77.     As a direct and proximate result of Defendants' violations of Section 10(b) and Rule 10b-5, Plaintiff has been damaged in an amount to be proven at trial, but not less than $250,000, plus interest and consequential damages.

78.     Plaintiff is entitled to all remedies available under Section 10(b) of the Securities Exchange Act and Rule 10b-5, including compensatory damages, rescission, and any other relief the Court deems appropriate.

## FOURTH CLAIM FOR RELIEF

**(Violation of Securities Exchange Act of 1934 § 20(a) Control Person Liability Against Johnson)**

79.     Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

80.     As alleged in the Third Claim for Relief, Henman and GMG violated Section 10(b) of the Securities Exchange Act and Rule 10b-5 in connection with the offer and sale of the Magicverse security to Plaintiff.

81.     At all relevant times, Johnson was a controlling person of Henman and GMG within the meaning of Section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a). Johnson had the power to direct or cause the direction of the management and policies of Henman and GMG with respect to the Magicverse investment offering and the solicitation of Plaintiff's investment.

82.     Johnson exercised actual control over Henman's conduct in offering and selling the Magicverse security to Plaintiff, as demonstrated by the coordination of banking logistics explicitly identifying Plaintiff's investment as being "for MJ" and Johnson's direct involvement in the financial infrastructure of the scheme. The explicit references to "partner deposit for MJ" and coordination of banking procedures specifically to ensure the Wells Fargo manager "knows this is

for Magic J" demonstrate Johnson's involvement in and control over the financial infrastructure of the offering.

83.    Johnson cannot establish the good faith defense because he knowingly participated in the fraudulent scheme, allowed his name and reputation to be used to induce investments, coordinated banking procedures to facilitate the fraud, and failed to exercise reasonable care to prevent the securities law violations.

84.    As a direct and proximate result of Johnson's control person liability under Section 20(a), Plaintiff has been damaged in an amount to be proven at trial, but not less than $250,000, plus interest and consequential damages.

85.    Plaintiff is entitled to joint and several liability against Johnson for all damages caused by the securities law violations of Henman and GMG.

### FIFTH CLAIM FOR RELIEF

**(Violation of 18 U.S.C. § 1962(c) (RICO) Against All Defendants)**

86.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

87.    Defendants Henman and Johnson, together with other known and unknown persons, constituted an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) engaged in and affecting interstate commerce. The Enterprise existed for the common purpose of fraudulently soliciting investments in purported NFT and metaverse ventures, misappropriating investor funds, and concealing the fraudulent nature of the scheme through ongoing misrepresentations.

88.    Defendants were employed by and associated with the Enterprise and conducted and participated, directly and indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity, as defined by 18 U.S.C. § 1961(1) and (5).

89.     The pattern of racketeering activity consisted of multiple acts of wire fraud in violation of 18 U.S.C. § 1343, mail fraud in violation of 18 U.S.C. § 1341, and securities fraud in violation of 18 U.S.C. § 1348.

90.     **Wire Fraud Predicate Acts:** On or about August 2, 2022, Henman transmitted an electronic text message to Plaintiff in interstate commerce stating "I give Magic partner list tomorrow," which was part of the scheme to defraud Plaintiff by falsely representing that Plaintiff would be recognized as a partner in Johnson's venture. This constituted wire fraud in violation of 18 U.S.C. § 1343.

91.     On or about August 4, 2022, Henman transmitted electronic text messages to Plaintiff in interstate commerce stating "FYI - partner deposit for MJ" and "She knows this is for Magic J," which were part of the scheme to defraud Plaintiff by creating the false impression of Johnson's active partnership and investment validation. These constituted wire fraud in violation of 18 U.S.C. § 1343.

92.     On or about August 4, 2022, Henman transmitted an electronic email to Wells Fargo personnel coordinating the $250,000 cash deposit, which was transmitted through interstate internet infrastructure and was part of the scheme to facilitate collection of fraudulently obtained funds. This constituted wire fraud in violation of 18 U.S.C. § 1343.

93.     During 2022 and 2023, Henman transmitted multiple electronic text messages and communications to Plaintiff providing false updates about the project status, false excuses for delays, and false representations about attorneys sending demand letters, all of which were transmitted through interstate commerce and were part of the scheme to defraud and delay accountability. Each such communication constituted a separate act of wire fraud in violation of 18 U.S.C. § 1343.

94.     Defendants utilized social media platforms operating through interstate internet infrastructure to promote the Magicverse project and create false

impressions of legitimacy and Johnson's involvement. These constituted wire fraud in violation of 18 U.S.C. § 1343.

95.    **Securities Fraud Predicate Acts:** Defendants' fraudulent offer and sale of the unregistered Magicverse security to Plaintiff through material misrepresentations and omissions as alleged herein constituted securities fraud in violation of 18 U.S.C. § 1348. Each material misrepresentation in connection with the offer and sale constituted a separate predicate act.

96.    **Mail Fraud Predicate Acts:** Defendants' scheme necessarily involved use of the United States mails or private interstate carriers in transmitting documents, correspondence, and materials related to the fraudulent investment offering. Any such mailings constituted mail fraud in violation of 18 U.S.C. § 1341. To the extent Defendants caused any banking documents, account statements, or other materials related to the fraudulent scheme to be transmitted through the United States mails or private interstate carriers, each such transmission constituted mail fraud in violation of 18 U.S.C. § 1341.

97.    These predicate acts of racketeering activity were related to each other as part of a common scheme to fraudulently solicit investments through material misrepresentations, misappropriate investor funds, and conceal the fraud through ongoing deception. These predicate acts demonstrated continuity in that they occurred over an extended period from at least July 2022 through December 2023 and threatened continued criminal activity.

98.    By reason of Defendants' violations of 18 U.S.C. § 1962(c), Plaintiff was injured in its business and property. Plaintiff's injury was proximately caused by Defendants' pattern of racketeering activity. Specifically, Plaintiff invested $250,000 and suffered additional consequential losses as a direct result of Defendants' fraudulent wire communications, use of the mails, and securities fraud.

99.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover threefold the damages sustained, plus the cost of the suit and reasonable attorneys'

fees. Plaintiff's actual damages exceed $250,000, and trebling of these damages would result in an award exceeding $750,000, plus consequential damages, costs, and attorneys' fees.

## SIXTH CLAIM FOR RELIEF

### (Violation of 18 U.S.C. § 1962(d) (RICO Conspiracy) Against All Defendants)

100.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

101.    Defendants conspired to violate 18 U.S.C. § 1962(c) by agreeing to conduct and participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity.

102.    Defendants knowingly and intentionally agreed to the overall objective of the conspiracy, which was to fraudulently solicit investments through material misrepresentations, misappropriate investor funds, and conceal the fraudulent nature of the scheme. Each Defendant knew the general nature and scope of the conspiracy and intended to participate in it.

103.    Defendants committed overt acts in furtherance of the conspiracy, including making material misrepresentations to Plaintiff regarding the September 2022 launch date, Dr. Dre's purported investment, exclusive jewelry store rights, and touring opportunities with Johnson; coordinating banking logistics and explicitly identifying deposits as "for Magic J"; transmitting fraudulent wire communications through interstate commerce; promoting the scheme through social media; providing false updates and excuses during 2023; fabricating representations about retaining attorneys; and ultimately retaining Plaintiff's $250,000 funds while ceasing all communication.

104.    By reason of Defendants' violations of 18 U.S.C. § 1962(d), Plaintiff was injured in its business and property. Plaintiff's injury was proximately caused by Defendants' RICO conspiracy. Specifically, Plaintiff invested $250,000 and

suffered additional consequential losses as a direct result of Defendants' coordinated fraudulent scheme.

105.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover threefold the damages sustained, plus the cost of the suit and reasonable attorneys' fees. Plaintiff's actual damages exceed $250,000, and trebling of these damages would result in an award exceeding $750,000, plus consequential damages, costs, and attorneys' fees.

### SEVENTH CLAIM FOR RELIEF

**(Violation of California Corporations Code § 25110 Against All Defendants)**

106.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

107.    At all relevant times, the Magicverse investment opportunity constituted a "security" within the meaning of California Corporations Code Section 25019.

108.    California Corporations Code Section 25110 makes it unlawful to offer or sell any security in California unless the sale has been qualified with the California Commissioner of Financial Protection and Innovation or is exempted or not subject to qualification.

109.    Defendants offered and sold the Magicverse security to Plaintiff in California without qualifying the offering with the California Commissioner of Financial Protection and Innovation as required by California Corporations Code Section 25110.

110.    No exemption from the qualification requirements applied to Defendants' offer and sale of the Magicverse security to Plaintiff.

111.    As a direct and proximate result of Defendants' violations of California Corporations Code Section 25110, Plaintiff has been damaged in an amount to be proven at trial, but not less than $250,000.

112.    Pursuant to California Corporations Code Section 25503, Plaintiff is entitled to rescission and recovery of the consideration paid for the security with interest at the legal rate from the date of payment, less the amount of any income received on the security, upon tender of the security, or if Plaintiff no longer owns the security, to damages equal to the consideration paid plus interest at the legal rate from the date of payment less any income received, plus reasonable attorneys' fees.

## EIGHTH CLAIM FOR RELIEF

**(Violation of California Corporations Code § 25401 Against All Defendants)**

113.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

114.    At all relevant times, the Magicverse investment opportunity constituted a "security" within the meaning of California Corporations Code Section 25019.

115.    California Corporations Code Section 25401 makes it unlawful for any person to offer or sell a security in California by means of any written or oral communication that includes an untrue statement of material fact or omits to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

116.    Defendants offered and sold the Magicverse security to Plaintiff in California by means of written and oral communications that included untrue statements of material fact. In mid-July 2022, Henman represented that the Magicverse Genesis NFT collection would launch in September 2022. Henman falsely represented that "Dr. Dre had already invested 500k" in the project. Henman represented that Plaintiff would receive exclusive rights to operate "the only jewelry store in the Magic metaverse." Henman represented that Plaintiff would tour with Johnson to promote the project. Henman represented that Plaintiff would receive perpetual royalty payments for life and would quickly recoup the

investment and double it upon the initial mint. These statements were false when made.

117.    Defendants offered and sold the Magicverse security to Plaintiff by means of communications that omitted to state material facts necessary to make the statements made not misleading, including the unregistered nature of the offering, the speculative nature of the investment, Defendants' lack of development capability and operational infrastructure, and the true extent of Johnson's involvement.

118.    Johnson's direct involvement is demonstrated by the August 2, 2022 text message stating "I give Magic partner list tomorrow," the August 4, 2022 messages stating "FYI - partner deposit for MJ" and instructing that the Wells Fargo manager "knows this is for Magic J," and Johnson's coordination of banking logistics for Plaintiff's $250,000 deposit.

119.    Defendants acted with scienter in making these misrepresentations and omissions. Henman knew or recklessly disregarded that the September 2022 launch timeline was false when represented. Henman knew the representation regarding Dr. Dre's investment was false or made it with reckless disregard for its truth. Johnson knew or recklessly disregarded that his involvement was being used to induce investments through material misrepresentations when he coordinated banking activities explicitly identifying deposits as "for MJ."

120.    As a direct and proximate result of Defendants' violations of California Corporations Code Section 25401, Plaintiff has been damaged in an amount to be proven at trial, but not less than $250,000.

121.    Pursuant to California Corporations Code Section 25501, Plaintiff is entitled to damages equal to the consideration paid plus interest at the legal rate from the date of payment less any income received, plus reasonable attorneys' fees.

## NINTH CLAIM FOR RELIEF

**(Violation of California Corporations Code § 25501 Control Person Liability Against Johnson)**

122.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

123.    As alleged in the Seventh and Eighth Claims for Relief, Henman and GMG violated California Corporations Code Sections 25110 and 25401 by offering and selling unqualified securities through material misrepresentations.

124.    At all relevant times, Johnson directly or indirectly controlled Henman and GMG with respect to the Magicverse investment offering. Johnson exercised actual control over Henman's conduct in offering and selling the Magicverse security to Plaintiff.

125.    California Corporations Code Section 25501 provides that every person who directly or indirectly controls a person liable under Sections 25110 or 25401 is also liable jointly and severally with and to the same extent as such controlled person, unless the controlling person had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

126.    Johnson had knowledge of and reasonable grounds to believe in the existence of the facts by reason of which Henman's and GMG's liability exists. Johnson's direct participation in banking coordination, including the explicit references to "partner deposit for MJ" and instructions that the deposit was "for Magic J," demonstrate his actual knowledge and participation in the securities violations. Johnson's promotional activities and lending of celebrity credibility to induce investments further demonstrate his knowledge and control.

127.    As a direct and proximate result of Johnson's control person liability under California Corporations Code Section 25501, Plaintiff has been damaged in an amount to be proven at trial, but not less than $250,000.

128.    Johnson is jointly and severally liable with Henman and GMG for all damages caused by their violations of California securities laws, plus interest and reasonable attorneys' fees.

## TENTH CLAIM FOR RELIEF

### (Violation of California Corporations Code § 25504.1 Aiding and Abetting Against Johnson)

129.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

130.    As alleged in the Seventh and Eighth Claims for Relief, Henman and GMG violated California Corporations Code Sections 25110 and 25401 by offering and selling unqualified securities through material misrepresentations.

131.    Johnson knowingly and substantially assisted Henman and GMG in committing these securities law violations. Johnson provided substantial assistance by lending his celebrity status and reputation to the Magicverse investment scheme, directly coordinating banking logistics to facilitate collection of investor funds, and allowing his name to be used to induce investments while knowing or recklessly disregarding that material misrepresentations were being made to investors.

132.    The August 4, 2022 banking coordination communications, which explicitly identified Plaintiff's deposit as "for Magic J" and instructed Wells Fargo personnel that the deposit was "for Magic J," demonstrate Johnson's active participation in facilitating the collection of fraudulently obtained funds. These communications show Johnson was not a passive celebrity endorser but an active participant in the financial infrastructure of the scheme.

133.    Johnson knew that Henman and GMG were engaged in conduct that constituted a breach of California securities laws or was in reckless disregard of whether such conduct constituted a breach. Johnson had a general awareness that the overall venture was improper based on his direct involvement in coordinating

discrete banking procedures and his knowledge that his celebrity status was being used to induce investments.

134.   California Corporations Code Section 25504.1 provides that any person who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a violation of securities laws is liable jointly and severally with the primary violator.

135.   As a direct and proximate result of Johnson's aiding and abetting liability under California Corporations Code Section 25504.1, Plaintiff has been damaged in an amount to be proven at trial, but not less than $250,000.

136.   Johnson is jointly and severally liable with Henman and GMG for all damages caused by their violations of California securities laws, plus interest and reasonable attorneys' fees.

## ELEVENTH CLAIM FOR RELIEF
### (Common Law Fraud Against All Defendants)

137.   Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

138.   Defendants made false representations of material fact to Plaintiff, including that the Magicverse Genesis NFT collection would launch in September 2022; that Dr. Dre had invested $500,000 in the project; that Plaintiff would receive exclusive rights to operate the only jewelry store in the Magic metaverse; that Plaintiff would tour with Johnson to promote the project; that Plaintiff would receive perpetual royalty payments for life; and that Plaintiff would quickly recoup the initial investment and double it upon the initial mint.

139.   These representations were false when made. No NFT collection was ever created or launched. Dr. Dre had not invested in the project. No metaverse was developed. No touring opportunity existed. No royalty payments were ever made.

140.    Defendants knew these representations were false when made or made them with reckless disregard for their truth. The complete failure to launch any product more than three years later demonstrates that no legitimate development effort was underway when the representations were made.

141.    Defendants also omitted material facts, including that the offering was unregistered, that Defendants lacked the technical capability and operational infrastructure to develop the product, and that Johnson's actual involvement was limited despite using his name and celebrity status to induce investments.

142.    Defendants made these representations and omissions with the intent to induce Plaintiff's reliance and to cause Plaintiff to invest $250,000 in the Magicverse scheme.

143.    Plaintiff reasonably relied on Defendants' false representations in deciding to invest $250,000. Plaintiff had known Henman since 2015-2016 and had consulted her regarding cryptocurrency matters. Johnson's celebrity status and apparent involvement provided credibility to the venture.

144.    As a direct and proximate result of Plaintiff's justifiable reliance on Defendants' false representations, Plaintiff has been damaged in an amount to be proven at trial, but not less than $250,000, plus consequential damages, interest, and costs.

145.    Defendants' conduct was malicious, oppressive, and fraudulent, entitling Plaintiff to punitive damages in an amount sufficient to punish Defendants and deter future similar conduct.

## TWELFTH CLAIM FOR RELIEF

### (Promissory Fraud Against All Defendants)

146.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

147.    Defendants made promises to Plaintiff regarding future conduct, including promises to launch the Magicverse Genesis NFT collection; to provide

Plaintiff with exclusive jewelry store rights in the Magic metaverse; to provide Plaintiff with opportunities to tour with Johnson to promote the project; to pay Plaintiff 1.75% of initial mint revenue; to pay Plaintiff 1% of ongoing royalties; and to provide Plaintiff with reasonable information regarding marketing plans.

148.    At the time these promises were made, Defendants had no intention of performing them and made the promises solely to induce Plaintiff to invest $250,000.

149.    Defendants knew these promises were false when made. Defendants lacked any viable plan, technology, development team, or operational infrastructure to create and launch the represented product. Defendants' subsequent conduct—repeatedly delaying, making excuses, fabricating false representations about attorneys, becoming progressively less responsive, and ultimately abandoning all communication while retaining Plaintiff's funds—demonstrates they never intended to perform.

150.    Defendants made these promises with the intent to deceive Plaintiff and to cause Plaintiff to invest $250,000 in the Magicverse scheme.

151.    Plaintiff reasonably relied on Defendants' promises in deciding to invest $250,000.

152.    As a direct and proximate result of Plaintiff's justifiable reliance on Defendants' false promises, Plaintiff has been damaged in an amount to be proven at trial, but not less than $250,000, plus consequential damages, interest, and costs.

153.    Defendants' conduct was malicious, oppressive, and fraudulent, entitling Plaintiff to punitive damages in an amount sufficient to punish Defendants and deter future similar conduct.

## THIRTEENTH CLAIM FOR RELIEF

### (Breach of Contract Against Henman and GMG)

154.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

155. On August 4, 2022, Plaintiff and Defendant Henman, acting on behalf of Global Management Group, entered into a valid and binding written Magicverse Investment Agreement.

156. Under the Investment Agreement, Plaintiff agreed to invest $250,000 in exchange for 1.75% of initial mint revenue and 1% of ongoing royalties from the Magicverse Genesis NFT Collection. The Agreement also required Defendants to provide Plaintiff with reasonable information regarding marketing plans for the product.

157. Plaintiff performed all obligations under the Investment Agreement by investing the full $250,000 within the required time period.

158. Defendants breached the Investment Agreement by: failing to create or launch the Magicverse Genesis NFT Collection; failing to generate any mint revenue or royalty payments; failing to pay Plaintiff any portion of revenues or royalties; failing to provide Plaintiff with reasonable information regarding marketing plans; and failing to perform any work toward the promised project.

159. As a direct and proximate result of Defendants' breach of contract, Plaintiff has been damaged in an amount to be proven at trial, including return of the $250,000 investment, loss of expected revenue under the contract terms (1.75% of mint revenue and 1% of royalties), consequential damages, interest, and costs.

## FOURTEENTH CLAIM FOR RELIEF

### (Breach of Implied Covenant of Good Faith and Fair Dealing Against Henman and GMG)

160. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

161. The Investment Agreement entered into between Plaintiff and Defendants Henman and GMG contained an implied covenant of good faith and fair dealing requiring Defendants to refrain from conduct that would unfairly

frustrate Plaintiff's rights under the Agreement or deprive Plaintiff of the benefits of the contract.

162.    Defendants breached the implied covenant by: taking Plaintiff's $250,000 investment with no intention to perform; making no legitimate effort to develop or launch the Magicverse project; failing to use Plaintiff's investment funds for their intended purpose; providing false and evasive responses to Plaintiff's reasonable inquiries; fabricating excuses and false representations; ceasing all communication with Plaintiff after December 6, 2023; and retaining Plaintiff's investment while providing none of the promised benefits.

163.    Defendants' conduct was designed to unfairly frustrate Plaintiff's reasonable expectations under the Investment Agreement and to deprive Plaintiff of the contractual benefits while retaining Plaintiff's investment, all in bad faith.

164.    As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff has been damaged in an amount to be proven at trial, but not less than $250,000, plus consequential damages, interest, and costs.

## FIFTEENTH CLAIM FOR RELIEF

### (Violation of California Business & Professions Code § 17200 et seq. Against All Defendants)

165.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

166.    California Business and Professions Code Section 17200 et seq. prohibits any unlawful, unfair, or fraudulent business act or practice.

167.    Defendants engaged in unlawful business acts and practices by violating federal securities laws, including Section 5 of the Securities Act, Section 17(a) of the Securities Act, Section 10(b) of the Securities Exchange Act, and RICO statutes, as alleged in the First through Sixth Claims for Relief. Defendants also violated California securities laws, including California Corporations Code

Sections 25110, 25401, 25501, and 25504.1, as alleged in the Seventh through Tenth Claims for Relief. Defendants further violated common law fraud and contract principles, as alleged in the Eleventh through Fourteenth Claims for Relief.

168.    Defendants engaged in unfair business acts and practices by soliciting Plaintiff's $250,000 investment through material misrepresentations, failing to disclose material information required by law, failing to perform any of the promised services or benefits, and retaining Plaintiff's investment while providing no consideration in return. This conduct offends established public policy protecting investors from unregistered securities offerings and fraudulent investment schemes. Defendants' conduct was immoral, unethical, oppressive, and unscrupulous. The harm to Plaintiff—loss of $250,000, deprivation of expected returns, and opportunity costs—substantially outweighs any countervailing benefits and could not reasonably have been avoided by Plaintiff despite the exercise of due care.

169.    Defendants engaged in fraudulent business acts and practices by making false and misleading statements to Plaintiff regarding the Magicverse project, the September 2022 launch timeline, Dr. Dre's purported $500,000 investment, exclusive jewelry store rights, touring opportunities with Johnson, perpetual royalty payments, and expected returns. Defendants made these statements with the intent to deceive Plaintiff and other potential investors. These deceptive practices were likely to mislead members of the public into investing in unregistered securities based on false celebrity endorsements and misrepresentations of project viability.

170.    Defendants' unlawful, unfair, and fraudulent business practices were committed in the course of conducting business and constitute a pattern and practice of such conduct.

171.    Plaintiff has suffered injury in fact and lost money as a direct result of Defendants' unlawful, unfair, and fraudulent business practices. Plaintiff invested $250,000 based on Defendants' misrepresentations and has received no returns, benefits, or consideration whatsoever.

172.    Plaintiff is entitled to restitution of all funds acquired by Defendants through unlawful, unfair, or fraudulent business practices, including the full $250,000 investment plus any income or appreciation Defendants obtained through use of those funds.

173.    Plaintiff is also entitled to injunctive relief enjoining Defendants from offering or selling unregistered securities in violation of federal or state law; making material misrepresentations or omissions in connection with investment offerings; soliciting investments through use of celebrity endorsements without adequate disclosure of the celebrity's actual involvement, compensation, and conflicts of interest; and engaging in any business practices involving NFT, cryptocurrency, or digital asset investment offerings without proper registration, qualification, and disclosure.

174.    Pursuant to California Business and Professions Code Section 17203, Plaintiff is entitled to recover reasonable attorneys' fees and costs incurred in prosecuting this action.

## SIXTEENTH CLAIM FOR RELIEF
### (Conversion Against All Defendants)

175.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

176.    Conversion requires: (1) plaintiff's ownership or right to possession of property; (2) defendant's wrongful disposition or exercise of dominion over the property; and (3) resulting damage to plaintiff.

177.    Plaintiff owned and had the right to possession of $250,000 in cash that Plaintiff transferred to Defendants in August 2022 based on the Investment

Agreement and Defendants' representations that the funds would be used to develop and launch the Magicverse project and that Plaintiff would receive specified revenue shares and benefits in exchange.

178.    Defendants wrongfully exercised dominion and control over Plaintiff's $250,000 by retaining the funds without providing any of the promised consideration, benefits, revenue shares, or opportunities; refusing to return the funds despite Plaintiff's demands beginning in March 2023; converting the funds to their own use rather than applying them to the stated purpose; and depriving Plaintiff of possession and use of the property by ceasing all communication after December 6, 2023.

179.    Defendants' retention and use of Plaintiff's $250,000 without providing the agreed-upon consideration and despite Plaintiff's repeated demands for return of the funds constitutes wrongful conversion of Plaintiff's property.

180.    Defendants acted with the intent to exercise dominion and control over Plaintiff's funds inconsistent with Plaintiff's rights. Defendants' conduct was willful, deliberate, and in conscious disregard of Plaintiff's property rights.

181.    As a direct and proximate result of Defendants' conversion, Plaintiff has been damaged in an amount to be proven at trial, but not less than $250,000, plus interest from the date of conversion, consequential damages, and costs.

182.    Defendants' conduct was malicious, oppressive, and fraudulent, entitling Plaintiff to punitive damages in an amount sufficient to punish Defendants and deter future similar conduct.

### SEVENTEENTH CLAIM FOR RELIEF

### (Unjust Enrichment Against All Defendants)

183.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

184.    Unjust enrichment requires: (1) a benefit conferred on defendant by plaintiff; (2) defendant's appreciation or knowledge of the benefit; and (3)

defendant's acceptance and retention of the benefit under circumstances making it inequitable for defendant to retain the benefit without payment of its value.

185.    Plaintiff conferred a benefit on Defendants by investing $250,000 in cash in the Magicverse project in August 2022.

186.    Defendants received, appreciated, and had knowledge of this benefit. Defendants obtained use and control of Plaintiff's $250,000 and coordinated specific banking procedures to accept the deposit as "for Magic J."

187.    Defendants have been unjustly enriched by retaining Plaintiff's $250,000 without providing any of the promised consideration, revenue shares, exclusive rights, promotional opportunities, or other benefits that were the basis for the investment. Defendants obtained the funds through material misrepresentations and false promises, failed to use the funds for their stated purpose, failed to provide any benefits in exchange, failed to respond to Plaintiff's demands for information or return of funds, and ultimately ceased all communication with Plaintiff while retaining the funds. It would be inequitable and unjust for Defendants to retain the benefit under these circumstances.

188.    Plaintiff has no adequate remedy at law that would fully compensate Plaintiff for Defendants' unjust enrichment. Money damages alone cannot restore Plaintiff to the position Plaintiff would have occupied absent Defendants' conduct.

189.    Plaintiff is entitled to restitution and disgorgement of all benefits Defendants obtained from Plaintiff, including the $250,000 investment plus any income, appreciation, or other value Defendants obtained through use of those funds, together with interest, costs, and such other equitable relief as the Court deems appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff DoneRight & Company, LLC prays for relief as follows:

1. For an Order rescinding the Magicverse Investment Agreement and requiring Defendants to make restitution to Plaintiff of the $250,000 consideration paid, plus interest at the legal rate from the date of payment, or, in the alternative, for an award of compensatory damages in an amount not less than $250,000;

2. For an award of compensatory and consequential damages in an amount to be proven at trial;

3. For an award of treble damages pursuant to 18 U.S.C. § 1964(c) in an amount equal to three times Plaintiff's actual damages for Defendants' violations of RICO statutes;

4. For an award of punitive damages in an amount sufficient to punish Defendants and deter future similar conduct for Defendants' fraud, promissory fraud, and conversion;

5. For preliminary and permanent injunctive relief enjoining Defendants from:
   a. Offering or selling unregistered or unqualified securities in violation of federal or state law;
   b. Making material misrepresentations or omissions in connection with the offer or sale of securities or investment opportunities;
   c. Soliciting investments through use of celebrity endorsements without adequate disclosure of the celebrity's actual involvement, compensation, and conflicts of interest;
   d. Engaging in any business practices involving NFT, cryptocurrency, metaverse, or digital asset investment offerings without proper registration, qualification, and disclosure;

6. For an order requiring Defendants to disgorge all profits, benefits, and compensation derived from the unlawful conduct alleged herein;

7. For an order requiring Defendants to make restitution of all funds acquired through unlawful, unfair, or fraudulent business practices pursuant to California Business and Professions Code Section 17200 et seq.;

8. For an award of pre-judgment interest at the maximum rate permitted by law;

9. For an award of post-judgment interest at the maximum rate permitted by law;

10. For an award of reasonable attorneys' fees and costs of suit pursuant to 15 U.S.C. § 77l, 18 U.S.C. § 1964(c), California Corporations Code Sections 25501, 25503, and 25504.1, California Business and Professions Code Section 17203, and any other applicable statutes;

11. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.


DATED: February 11, 2026          Respectfully submitted,


                                  By:  /s/ James Bryant
                                  James A. Bryant
                                  james.bryant@thecalawgroup.com
                                  4929 Wilshire Blvd. Suite 1010
                                  Los Angeles, CA 90010
                                  Telephone: (323) 435-8205
                                  Fax: (310) 802-3829

                                  *Attorneys for Plaintiff*
                                  *DoneRight & Company, LLC*